Per Curiam.

The controlling facts are not in dispute.
Counsel were duly notified that the trial of the case itself was scheduled for 9:30 o’clock a. in., October 20, 1955, in the courthouse at Zanesville, Ohio.
On that morning Attorney Hamilton left his home in the *63 easterly part of Columbus sometime between 7:30 and 8:00 o’clock to drive the distance of approximately 50 miles to Zanesville. At about 8:15 he experienced mechanical difficulty with his automobile. When he found he was unable to proceed, he telephoned to his office and told his secretary to call the court officials in Zanesville and inform them of his trouble and also of his expectation of arriving at the court between 9:30 and 10:00 o’clock. When counsel did not arrive at 10:00 o’clock, the judge proceeded to impanel the jury. While the impaneling was in progress, counsel arrived at'10:10 o’clock, and the judge invited counsel to assist in completing the jury. This was done. The trial proceeded and the case was submitted to the jury.
Thereupon, in the absence of the jury and opposing counsel, the judge called counsel before the bench, and the following transpired :
“Mr. Hamilton we sent a letter out of here on the 2nd of September that the case was assigned at 9:30 and a little before 9:30 your office called and said you would be delayed and we waited until 10 o’clock and you were not here and it was not only our time and the jurors’ time and no one was here, you or your client, either one, and then in a very awkward way we began a little after 10 o’clock by my inquiring of the jury somewhat and Mr. Blanchard began inquiring of the jurors first. Now, why were you late this morningf I understood and appreciate your call notifying me you would be late. This case was assigned for 9:30 and continued until 10 o’clock and you were not here. Now why?
“Mr. Hamilton: Perhaps I should start at the beginning. In your letter to Mr. Agee, no, I did not see the letter, but I know you did assign the case.
“The Court: The court sent the letter.
“Mr. Hamilton: Of course the letter didn’t come to me and I did expect to be here at 9:30. I left my home in the east end of Columbus at 8:15 and I started here and began to have some trouble with my car and I immediately called my secretary and told her to call here. [Subsequently the appellant filed an affidavit in which he stated that upon investigation he discovered that he had in fact left Columbus that morning between 7:30 and 8:00 o’clock.]
*64 “The Court: Where was that?
“Mr. Hamilton: Out near Reynoldsburg.
“The Court: How long were you delayed?
“Mr. Hamilton: I would have been here on time.
“The Court: How long were you delayed?
“Mr. Hamilton: Probably 40 minutes. I stopped once and flagged a truck to help me.
“The Court: 8:15 is an awful late hour to start.
“Mr. Hamilton: I live in the east end of town, out this Avay.
“The Court: That is taking an awful chance and I think you understand our situation.
“Mr. Hamilton: Oh yes, and I am very sorry.
“The Court: We start on time and unless there is something very critical that was unforeseeable.
“Mr. Hamilton: I had this car in there yesterday.
“The Court: If you had started at 7:30 but you didn’t give yourself any time.
“Mr. Hamilton: This is a new 1955 Plymouth with 4,000 miles on it and I guess they told me a drain plug or something came out. A couple of days ago I had it in the garage and I had only driven it back from the garage at that time, and it missed and slowed doAvn and stopped.
“The Court: That was all the more reason to start earlier rather than start the last minute. That is not good enough. We can not accept that. I will have to find you in contempt of court by reason of your inexcusable lateness in arriving here. We were advised here you would be here at the latest from between 9:30 and 10 o’clock and that is something contrary to the manner in which we conduct our business so I will have to find you in contempt of court and fine you $100. You may pay the clerk and get your receipt.”
Neither the inherent nor the statutory power of courts to punish for direct, indirect (constructive, consequential), civil or criminal contempt is disputed.
In the Court of Appeals the appellant presented but one assignment of error. It read as follows:
“The court erred and abused its discretion in summarily finding Attorney Robert Dow Hamilton in contempt of court and assessing a penalty therefor.”
*65 Oil consideration of that assignment of error, the Court of Appeals reached the following conclusion:
“It is well known that the trial judge in Muskingum County does a tremendous amount of work -and works under heavy pressure, has rigid rules which he enforces, and strict practices to which counsel must adhere.
“ It is the notion of the members of this court that a lawyer from another county assuming to practice in a county where such rules and practices are enforced should take cognizance of them, be advised about them, govern himself accordingly, and would fail to do so at his peril.
“Here the appellant had knowledge of the fact that there was trouble with his car. At the outside he was allowing himself less than two hours to drive the 50 miles, and the notice did not get to the court until within a few minutes prior to the time he was due in Zanesville.
‘ ‘ Moreover, Mr. Hamilton conceded in open court that the trial judge, although acting in his judgment without any justification, was courteous, and not arbitrary or arrogant.
“In view of all these circumstances, we are unwilling to hold that the trial judge of the Muskingum County Court of Common Pleas abused his discretion, and the judgment may be affirmed.”
This court concurs in the commendation of the trial court for its practice of operating in a prompt and efficient manner. Litigants and the public are justly critical of a court that is conducted in a lackadaisical or indifferent fashion. This is wholly inexcusable on the part of any court from the lowest to the highest. In the instant case the trial court was justified in expecting that counsel would be present at the appointed hour of 9:30 o ’clock. However, counsel likewise is to be commended for his effort to advise the court of his difficulty as soon as possible after it arose. Unfortunately he did not reach the court by 10:00 o’clock as he predicted he would be able to do. It was 10 minutes later.
Under these circumstances was the trial court free from prejudicial error in proceeding as it did and in reaching the conclusion it did?
This court thinks not.
*66 In the first place there is nothing in the record to indicate that the appellant was informed of the fact that the matter of contempt was under consideration at the time the court called the appellant before the bench and began to question him in a summary manner. If the appellant was guilty of contempt, only a portion of the offense was direct and in the presence of the court, namely, entering the court late and after the trial had started. However, part of the alleged misconduct was committed on the trip from Columbus to Zanesville and hence not in or near the court itself. This was in the nature of an indirect contempt, and the appellant was entitled to an opportunity to proffer evidence to show any extenuating or even exculpatory circumstances.
Second, if the guilt of the appellant be assumed, this court is of the opinion that the fine of $100 imposed by the trial court was so disproportionate to the seriousness of the offense as to require a reversal.
In conformity with these views, the judgment is reversed and the cause is remanded to the Court of Common Pleas for a rehearing.

Judgment reversed.

WeygaNdt, C. J., Matthias, Hast, ZimmermaN and Beel, JJ., concur.